UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| ELIZABETH FONTENOT | CIVIL ACTION NO. |
| VERSUS | DISTRICT JUDGE: |
| BRINKER LOUISIANA INC. D/B/A CHILI'S GRILL & BAR AND ABC INSURANCE COMPANY | MAGISTRATE JUDGE: |

**************************************************************************

STATE OF LOUISIANA
PARISH OF ORLEANS

## **AFFIDAVIT**

BEFORE ME, the undersigned authority, appeared

### **MEGAN S. PETERSON**

who, after being duly sworn by me did state as follows:

1.      I am counsel for defendant, Brinker Louisiana, Inc.

2.      On May 14, 2020, this civil action was filed by Plaintiff, Elizabeth Fontenot ("Plaintiff"), in the 26th Judicial District Court for the Parish of Bossier, State of Louisiana, bearing docket number 162249, Section "1" and captioned "*Elizabeth Fontenot v. Brinker Louisiana, Inc. d/b/a Chili's Grill & Bar and ABC Insurance, Inc.*" ("Petition").

3.      Complete diversity exists because, on information and belief, Plaintiff was at the time of the filing of this action, and still is, a resident and domiciliary of the State of Louisiana; and the sole defendant, Brinker Louisiana, Inc., is a Virginia corporation whose principle place of business is in Dallas, Texas.

4.      In Plaintiff's Petition, it is alleged that on July 11, 2019, Plaintiff was a patron at Chili's Bar & Grill restaurant in Bossier City, Louisiana, and slipped and fell on water on the floor near her table *See generally*, **Exhibit B**, Petition for Damages.

1

**EXHIBIT A**

5.      In her Petition, Plaintiff does not specify the nature or extent of her alleged injuries or the treatment necessitated by same and thus do not establish the requisite amount in controversy. Specifically, in the Petition, Plaintiff generally alleges that as a result of the incident, she suffered "Severe and disabling injuries" and alleges entitlement to general categories of damages, including mental and physical pain and suffering, medical expenses, mental anguish and emotional distress, permanent damage and disability, loss of enjoyment of life, and lost wages. *See* **Exhibit B**, Petition for Damages, ¶¶ 3, 5.

6.      On November 4, 2020, the undersigned counsel received discovery responses from plaintiff. Therein, Plaintiff first articulated that she alleges the incident caused her to suffer "a right shoulder torn rotator cuff, neck, right knee, left leg and back pain." Plaintiff further alleges that she "suffers a broken left ankle from her left leg giving out due to her back pain." *See* **Exhibit C**, Plaintiff's Discovery Responses, Answer to Interrogatory No. 12. Her discovery responses further describe that she has been recommended a "right shoulder arthroscopy, debridement, subacromial decompression, acromioplasty, distal clavicle resection, rotator cuff repair, biceps tenodesis v. tenotomy." *See* **Exhibit C**, Plaintiff's Discovery Responses, Answer to Interrogatory No. 17.

7.      Plaintiff's discovery responses also itemize past medical expenses of at least $20,835.18. Plaintiff notes that a few invoices remain outstanding and the total for past medical specials will be higher. *See* **Exhibit C**, Plaintiff's Discovery Responses, Answer to Interrogatory No. 14.

8.      Further, on November 9, 2020, the undersigned received the document production from Plaintiff containing medical treatment records. The production includes a cervical MRI study, where the interpreting radiologist noted disc bulging or herniations. *See* **Exhibit A-1**, Cervical MRI. Further, plaintiff produced a right shoulder MRI, where the interpreting radiologist noted a full thickness infraspinatus tendon tear, and the recommendation of Dr. Fenn for the shoulder

procedure previously described. *See* **Exhibit A-2**, Shoulder MRI; **Exhibit A-3**, Dr. Fenn September 3, 2020, Office Note. In the last treatment visit provided, from October 15, 2020, Dr. Fenn noted the fall and ankle fracture and recommended an ankle MRI. Dr. Fenn also reiterating the surgical recommendation and recommended bilateral epidural steroid injections (ESIs) at L4-5 and L5-S1. **Exhibit A-4**, Dr. Fenn, October 15, 2020, Office Note.

9.      As such, Plaintiff's treatment appears to be ongoing, including further contemplated treatment for her fractured ankle, a recommended shoulder surgery, and recommendations for lumbar ESIs.

10.     The undersigned was not on notice that the amount in controversy in this matter exceeds $75,000 until at least November 4, 2020, upon receipt of the discovery responses indicating treatment and imaging studies for neck and low back pain radiating to the extremities, a broken ankle, and a recommended shoulder surgery. Further, the discovery responses itemized past medical expenses of at least $20,835.18. This alone satisfies the amount in controversy requirement.

11.     Receipt of the later medical records further evidence continued treatment for a fractured ankle and recommendations for ESIs to plaintiff's lumbar spine, further demonstrating that the amount in controversy exceeds the jurisdictional minimum.

12.     The foregoing is true and correct to the best of my knowledge.

_____

MEGAN S. PETERSON

SWORN TO AND SUBSCRIBED

BEFORE ME, THIS 2ND DAY OF DECEMBER, 2020.

**CHARLES E. RILEY, IV**
Notary Public. State of Louisiana
La. Bar Roll No. 28200
My Commission Is Issued For Life.

_____
NOTARY PUBLIC